It would counsel for 21-3118 Hills v. Arensdorf. Please proceed. Thank you, Your Honor. Terry Campbell on behalf of the appellate Wendy Hills. May it please the court. I intend to reserve three minutes for rebuttal. Wendy Hills sued her father's accountant for legal malpractice and the unauthorized practice of law because he prepared assignment documents 12 days before Wendy's father died at the behest of Wendy's stepmother who transferred approximately $10 million of her father's money into her stepmother, reducing the benefit Wendy would have otherwise received on that property. The district court dismissed Wendy's claims on an erroneous theory of law. And I would suggest to this court that what we have as we stand here today is an erroneous ruling under Kansas law, under the parole evidence rule, that's going to create problems for future practitioners. And I think this court needs to address that. Before you get into that, could you address the issue that Judge Krause and neither of the parties addressed, sort of a preliminary issue that I find it curious that no one briefed, and that is whether we can even consider holding a non-attorney, in this case an accountant, Mr. Arnstorff, liable for professional legal malpractice. And it didn't appear that the parties had briefed that. Judge Krause dropped a footnote saying, yeah, I'm not, parties don't go there, so I'm not. But to me that is a preliminary issue and I think there's a real question about whether this first cause of action can even stand. Fair enough question, Your Honor, although I don't know that I'm fully prepared to answer it because, as you noted, the parties didn't brief it, we have assumed it. And I think the reason is because Mr. Arnstorff was in fact, and there's ample evidence to this effect in the operative complaint, was in fact practicing law. And so, on that basis... But he's not a lawyer and the Kansas Supreme Court has held that, at least in legal malpractice cases, that one of the elements is an attorney-client relationship. And there's case law from other courts saying you can't apply a professional malpractice case to non-lawyers, or the non-professional. It certainly, even if you don't want to characterize it as an attorney malpractice case, it certainly is a professional malpractice case and we think that attorney duties in this context would apply. And I'm afraid I can't give you a better answer than that. Well, I do have a continued answer because I think what you want us to do is hold him to the standard of care of a licensed, reasonable attorney. How do we do that? Even if we accept that we can, how do you practically apply what a reasonable attorney who is trained and licensed would have done in this situation? Well, you start by suggesting that you can avoid all those rules if you don't engage in the practice of law, of course. And then, as I said, you have to, I think Your Honor is correct, that yes, you have to apply those rules to anyone who is, in fact, practicing law. And that's, I haven't read those cases that Your Honor is suggesting from those other courts. Thank you. And even if, of course, the court has concerns about whether this legal malpractice theory can apply in this context, we still have the unauthorized practice of law claim, which I don't think has that problem. So, what the district court held, of course, was that these were not the decedent's intent. And the plaintiffs have, there are a host of allegations that suggest otherwise. And we're simply suggesting that the court under the Kansas parole evidence rule was incorrect. May I inquire, please? What really is the practical effect of the exclusion or the non-consideration of this extrinsic evidence? I mean, and to be more specific about it, why is that going to change the outcome? Because that evidence related to the, as I understood it, related to the general intent of the father as it relates to the estate planning for his family, who the farm would go to. The law would make a distinction between that general intent and whether, what seems to be the heart of this matter, whether your client was the third So, in other words, even if that evidence was in, even if that evidence was considered, that wouldn't change the fact that you have to explain why your client was the third party beneficiary on this transaction. What, that I've said, do you disagree with? So at least as to the unauthorized practice of law? No, no. Okay. I was assuming both were on the table and I was talking right now. We'll start with the unauthorized practice of law if you want, but I'd like you to circle back to the legal malpractice claim. So, as the unauthorized practice of law claim, we have a situation where Wendy separately and individually was harmed because she was in a situation where there was an estate planning-esque document, in this case, the prenuptial agreement, that said, 12 days later, Wendy was going to get this property as an intestate heir. Well, it didn't say that. It said the stepmother wasn't going to get it, right? Right. Now, that was, okay. Right. And Wendy and her brother were the only heirs. I suppose Wendy could have died in those 12 days. That would have taken her away. Or Doug could have given the property away. Absolutely. But she has a right, under Kansas law, to avoid the harm that comes from an undue influence caused transfer. That's the harm reduction. But does she? I mean, Judge Carson's question tees up the point about what would seem to be the speculative nature of this right. I mean, the point is, he didn't have to give it to her, whether he had told her every day, but in that interim period that he was going to give it to her, he could have changed his mind at the last minute and given it to somebody else. So, it would seem that there would have to be, and the district court's opinion alludes to this, some enforceable right that she can claim. If she was an intestate heir, am I corrected with Kansas law, your interest vests when the person becomes the decedent, when the person dies. And if that's the case, she had no cognizable interest. Did she? She may not have had a right to sue on the date of the transfer. I agree with Your Honor on that point. But 12 days later, she did. And we've cited some cases in the briefing that I don't have at the top of my head where that right accrues later, and you can go back and still sue for that wrong. Sue in the wrong being what at that point? So the wrong is the loss of the right to inherit without the operation of undue influence. Wendy had a right, for example, and maybe, perhaps even immediately upon the transfer of these properties into the trust. Wendy was a beneficiary of that trust, and she had a right as a beneficiary to challenge even the existence of that trust. The trust had never previously been funded, and so therefore didn't exist until these transfers occurred. But how is that this case? I mean, it seems to me that what's blending here is lawsuits that may have existed for the estate, may exist in some sense to vindicate the rights of some sort of breach of fiduciary responsibility of Mr. Aronsdorf to the now decedent, but that doesn't mean that she had a right. I mean, the point is, on the cases that you're talking about, in the sense that she had, all she had, as I understand it, is the parole evidence, oral promises of what he was going to do. And at the time that he dies, you're to say, well, there was undue influence, and therefore I have a right to recover? Yes, that would be Cresto, where the beneficiaries under a prior will sued for declaratory judgment and said, the new will was adopted under undue influence. She didn't have a prior will. Wendy didn't have a prior will. Well, Douglas didn't have a prior will. I think that's what Your Honor may mean. Well, I mean, yes, Douglas didn't have a prior will that benefited Wendy, is what I'm saying. And so the point is, they are not similarly situated to Cresto. And my recollection, vague as it is, of Cresto was that they were trying to eliminate that will, right? That was a will contest. That was challenging the will. That's not what we have going on here. Technically, Cresto was a declaratory judgment action that was combined with a probate action where the will was also being contested. Yes, well, I mean, okay, declaratory judgment action to provide the basis for an enforceable right. But what I'm saying is the nature of the claim would appear to be different than what we have going on here. I would suggest, Your Honor, that it's the same, because just as in Cresto, the decedent had a right to change his will as long as he didn't change that will under undue influence. Same here. The decedent had a right to transfer his property as long as that property transfer didn't occur in the context of undue influence. I mean, isn't that sort of your problem here, is that it sounds like you sort of have a fraud claim, and that claim would belong to the estate, where the estate goes after this interest, and then the personal representative distributes whatever they recover according to the laws of intestacy. Here, you're skipping that, and you have an individual after the fact, after the estate's already settled up, and outside of the estate proceeding, trying to make a recovery based on that conduct. I mean, aren't you one step too far? I understand the point, and I thought a great deal about this in the past several days. I think the answer is, Wendy, if you look at the petition in the Thomas County case, Wendy did sue in her individual capacity, and you might say, well, that was only because she was also trying to invalidate the trust, and there was a count for that, but she also sued in her individual capacity in the earlier counts, I believe, and I think she could have done that because she was a beneficiary of that trust to invalidate those transfers and invalidate the very existence of the trust because it didn't have otherwise any funding. So, I mean, that's what I can give you on that point, but I understand what the court's concern is. You're talking about the prior litigation in which she did seek to validate the trust and resulted in the settlement, right? Correct, yes. Okay, well, that's the action. I mean, the point is that would seem to be the appropriate action to take in this situation, not the one that's before us now. I mean, those two things aren't the same thing, as you know, and so I guess what I'm struggling to understand is, I can understand in some sort of visceral sense that she feels harmed, but, I mean, where is the enforceable right that she can claim? I mean, either vis-a-vis the, I guess the Kansas KCPA or something like that, that claim, or the legal malpractice claim. I mean, if there was nothing that indicated that she was specifically designated to receive, I mean, other than the oral promises, I just don't understand it. It's a right that she, in fact, asserted in Thomas County, I think. The prior litigation. The prior litigation. Yes. And so, therefore, that right also exists in this litigation. But the right to challenge the property transfers as an individual, she's also claiming that right in this litigation, just as she did in Thomas County. And you might look at Thomas County and say, well, that focused on the estates right, but I don't think that right went, I don't think that right was nonexistent in the Thomas County case. In that case, it resulted in a settlement, right? It did. Okay, well, we don't know how, as a matter of law, that would have played out, right, vis-a-vis her. We don't know that. Well, and I would suggest to the court, as we've said in some of the briefing, at least in the district court briefing that wasn't really briefed here, that that point doesn't matter. I see the time I'd like to reserve is expired, if I'm not mistaken. That's fine. Please, the court. My name is J.B. King, and I represent the defendant, Jerry Ehrenstorf. I agree with a number of things that have been set up here. There was a preliminary issue with regard to whether Mr. Ehrenstorf can be held to the standards of a lawyer. We decided that we had winning arguments on a number of different issues. There was nothing in the record, though. I mean, are you telling me about what your internal processing was? Is there anything in the record showing you briefed this issue? No, Your Honor. I was not trying to imply that. We did not brief the issue. Right. I didn't see anything. Right. We did not brief that issue. What we did instead was to, because there were allegations, and this was a motion to dispense, and there were allegations that he was acting in the capacity of a lawyer, we briefed it in that fashion.  In briefing it in that fashion, if you get by the hurdle of whether you can apply those standards at all. Do you think that we can? Can we? Can the plaintiff maintain a legal malpractice action against a non-attorney and apply a standard of care for attorneys to a non-attorney? I would say no, Your Honor. I mean, I think they do have a second cause of action that deals with this unauthorized practice of law, which is the one that would apply. Which has other questions, but that makes sense because it's the unauthorized practice of law. Correct. So, I guess, okay. But we dealt with a lack of duty on behalf of Mr. Ehrensdorf under applying basically attorney sorts of principles. We also dealt with this idea of a lack of enforceable right, and those were the two things that kind of dovetailed to result in the motion to dismiss. We looked at the intent here and found that in terms of the transaction itself, which is what we were focused on and which is what the law focuses on, the transaction itself, that the intent was never to benefit Wendy Hills. And the whole lawsuit really is the idea that these documents that got drawn up did not benefit Wendy Hills. So, this also goes back to the idea of whether Wendy had an enforceable right. It's our contention that she didn't have an enforceable right. What she had were oral promises, perhaps from her father, that he was going to devise his estate in such a fashion that it would benefit her, but he never took the step of actually doing that. And what he ended up with at the end of life was a situation where property went by virtue of intestate succession. And the law is that in that situation, Wendy Hills had no right to the property. She had no rights. We had this unenforceable oral promise that she was going to get an inheritance someday. And then you take that and you say, what else do we have in this case? And what we have is a trust that was funded that specifically says where the property is going to go to. And you have a comparison between that trust and these oral promises. These oral promises are not enforceable under Kansas law. The situation with regard to the written trust agreement, I mean, that is enforceable under Kansas law. So, in terms of the parole evidence rule, which is something that we did rely upon, which the district court did rely upon, you have a situation where you have these oral promises in direct variance with the trust documents. And in that kind of a situation, what you look at is the four corners of the trust documents. And you do not look at the oral promises. But I think, correctly, the court has already noted that even if you look at the oral promises, it doesn't really get you where you need to go in this case. When I asked opposing counsel about this whole question of enforceable right, I believe this is when this came up, he referred to Cresto. And give me your best take on how Cresto informs or does not the question of an enforceable right in this context for winning. Right. Cresto was an undue influence case, not a case like this, an negligence case. The other part of it is, which is important, in Cresto you had all sorts of documents. You had wills, you had trusts that got amended a number of different times. And the claim was that the vested rights that were in these wills and trust documents were changed to the detriment of the claimant. And that's entirely different from what we have here. We don't have any vested rights. And in Cresto, the appellant has used Cresto to somehow enlighten the court with regard to the parole evidence rule. Well, parole evidence rule was never mentioned in that case because there was no need to mention it because you were dealing with documents all up and down the line. Was there any suggestion in the state court lawsuit that the estate should recover any fees they expended? Or that the estate should pursue a malpractice claim for your client's work? No, Your Honor. I mean, the state court action dealt with a claim by the estate and by Wendy Hills and by her brother against Janelle, the wife of Douglas, to basically set aside the trust and to take away the interest that was given to Janelle by the trust. Mr. Ehrenstorf's name was mentioned throughout those pleadings, but for some reason, he was never sued in that lawsuit. So there was no claim at all. Would it be your position that his actions were intertwined with Ms. Janelle's actions to an extent that any lawsuit against him would have had to come at the same time and in the same proceeding as the state court lawsuit? Yes, Your Honor, that would be our position. An alternative ground that we've raised for affirming the district court's decision is the release that was given. Because all through the pleadings in the district court, in the state district court, there were allegations that Mr. Ehrenstorf was acting as an agent of Janelle. And I mean, that was a focal point of all those pleadings. Then they settled the case and they released all the agents of Janelle. And then they said, well, he was acting not only as an agent for Janelle, but he was acting as an agent for Douglas. At the same time, we didn't release him as an agent for Douglas. Well, we think that's too fine a point. So I think another way, a simple way to dispose of this case would be to say that the claims against Mr. Ehrenstorf were released in the state court action and that alternatively, it should have been brought in the state court action. Okay, so aside from your release angle, did you specifically articulate to the district court that any claims they had against your client should have been brought in the state court action? What we articulated was that Wendy's claims were being brought by the wrong party, that they should have been brought by the estate.  Okay. And just so I'm clear, were there two federal lawsuits by Wendy? One against your client and one against Ms. Janelle and the trustees? Yes. Okay. Yes, Your Honor. There were three lawsuits total. There was a state court lawsuit. There was one in federal court brought in the initial wave of litigation. Then there's this lawsuit. Okay. So the release specifically mentions Wendy's state court lawsuit and federal court lawsuit, but it does not mention the one against your client specifically? That's correct. The way that it implicates my client is that it specifically releases Janelle's agents with regard to all conduct that's alleged in the Thomas County state lawsuit and in the federal lawsuit. And my point is that the conduct was the same conduct. It's the same conduct that you can read these pleadings together, and much of them are identical. Right. Okay. Some of this has occurred to me as you were talking, so I didn't do the math. The timing of the federal lawsuit that we're talking about today, was that filed after the release in this case? That's correct. Okay. Thank you. After the release in the state court case. In the state court case. I'm sorry. Yep. Moving on for a minute to the Kansas Consumer Protection Act. The Kansas Consumer Protection Act provides a claim for an aggrieved consumer, and the Kansas cases that interpret that word aggrieved require that the plaintiff have legal rights that were harmed by, in this case, Mr. Arendorff's conduct. And so the appellate runs into the same issue. There is no legal right that was harmed. There was no legal enforceable right arising out of these oral promises, no legal enforceable right arising out of the potential for intestate succession, ultimately resulting in a distribution to Wendy. The court also went on, the district court went on and found that not only was there not an enforceable right, but there had been no agreement between Wendy and Mr. Arendorff to provide legal services. And she didn't rely on his legal skills or services. What do we make of the argument that this reliance issue is not an element of the claim as distinct from the causation? At least I understood it in their brief that one allegation of error related to the district court talking about reliance when that is a distinct matter from causation for purposes of a KCPA claim. What do we make of that? I think the court, the district court, found these, as I read the district court's decision, really hung its hat more on this fact that there was not an enforceable right. And I think that that even, I mean, you could focus on reliance, but that's, you don't have to in order to find that there was no aggrieved consumer. I mean, all you have to find is that there was no legal right that was harmed. Well, yes, I understand that, but is reliance actually an element of such a claim? It can be an element of such a claim. It's not a necessary element of such a claim. All right. When the reliance is the causation, the cases that the appellant cites, the reliance essentially is the causation element. Correct. Right. But, and the court may, I think the Kansas Supreme Court used the term reliance a couple of times, but in referring to it as the causation element. Here, we don't, you wouldn't need to have reliance as the district court suggested, would you? You just need the causation.  Yes, ma'am. Thank you. Time's up, counsel. Yes, Your Honor. Thank you. No, thank you. A few things to clean up. I think Mr. King may have misremembered the record. The case before this court was filed before the release was signed. And then we signed the release, the parties signed the release in the previous litigation. We amended the complaint in this case to make it clear that we did not intend in that prior release to release Mr. Armstrong. So that's the sequence of events on that. I think the record will reflect that. Getting back to this sort of standing-esque issue, standing-esque issue, in some sense, I think what we're talking about is, in the malpractice context, the case within a case doctrine, which sort of bleeds over also into the unauthorized practice of law. And so that's why I've been addressing my comments in the previous case. Could Wendy individually have brought these claims against Mr. Armstrong? I think the answer is yes. And it's not because of some prior promise. It's because what she's trying to do is to void a transfer. She's not trying to say, this promise before means this property was to come to me. She's instead saying, this was a property transfer that should and ought to be void. Cresto says you can do that in the will context. There's an old case called Fairbank that we've cited in the briefing that says you can do that when you're trying to set aside a deed, although that was 100 years old. And if you void the transfer, what happens? How does that nurture or benefit? It goes back to the estate in that context. But it also, because Wendy is a beneficiary of the trust, it voids the trust, which has the same effect. And if the court is concerned about the estate bringing the claim to return the property to the estate, you can also look at the fact that Wendy was a beneficiary of the trust. The trust didn't exist, which has the same operation. Okay, well, the implication you're saying would be to void the trust. How does that relate to the relief that is sought here? It suggests that Wendy has standing under the case-within-a-case doctrine. Okay. And that's sort of the point. Thank you, Your Honor. Thank you, counsel, for your arguments. Case is submitted.